UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADAC PLASTICS, INC. EMPLOYEE
BENEFITS PLAN and ADAC PLASTICS, INC.,

    Plaintiffs,

v.

Civil Action No. 12-CV-15615-DT
Honorable Denise Page Hood

BLUE CROSS AND BLUE SHIELD OF
MICHIGAN,

    Defendant.
_____/

## ORDER REGARDING VARIOUS MOTIONS
## AND ORDER STAYING CASE

**I.   BACKGROUND**

This is one of several cases brought by various Plaintiffs against Defendant Blue Cross and Blue Shield of Michigan ("Blue Cross") involving certain administrative fees which Plaintiffs allege were misappropriated by Blue Cross. Plaintiffs in this case, ADAC Plastics, Inc. ("ADAC") and ADAC Plastics, Inc. Employee Benefits Plan ("Plan"), filed the instant Complaint against Blue Cross on December 21, 2012 alleging: Breach of Fiduciary Duty–ERISA (Count I); Prohibited Transaction under ERISA (Count II); Violation of the Act (Count III); Health Care False Claims Act (Count IV); Breach of Contract, and alternatively, Covenant of Good Faith and Fair Dealing (Count V); Breach of Common Law Fiduciary Duty (Count VI); Conversion (Count VII); Fraud/Misrepresentation (Count VIII); and, Silent Fraud (Count IX).

Blue Cross administers ADAC's self-insured benefit Plan. (Comp., ¶ 1) ADAC wired large sums of money to Blue Cross, which Blue Cross was supposed to use to pay employee health care claims. (*Id.*) ADAC recently learned that, contrary to their contract, Blue Cross was skimming an

additional administrative fee from the money ADAC provided to pay claims. (*Id.*) ADAC asserts that Blue Cross' misappropriation of the Plan assets is a clear violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, as well as Michigan statutes and common law. (*Id.*)

ADAC's principal place of business is located in Grand Rapids, Michigan and is a plastic injection molding manufacturer supplying various parts for the automotive industry. (Comp., ¶¶ 2, 8) ADAC offers health care benefits through the Plan and is self-insured. (Comp., ¶ 9) Blue Cross is Michigan non-profit health care corporation organized under the Nonprofit Health Care Corporation Reform Act, MCL 550.1101, *et seq.* (Comp., ¶ 4) The parties entered into an Administrative Services Contract ("ASC") effective January 1, 2002 which sets forth the rights and responsibilities of each party with regard to the administration of the Plan by Blue Cross. (Comp., ¶ 10-11) The ASC provides that Blue Cross will process and pay claims, and ADAC would reimburse Blue Cross for all the Amounts Billed related to the Enrollees' claims. (Comp., ¶ 12) Blue Cross is entitled to an administrative fee, set forth in Schedule A of the ASC. (Comp., ¶¶ 15-16)

Schedule A dictated the specific prepay amounts ADAC was required to pay for the pro rata cost of estimated Amounts Billed for that quarter, the pro rata cost of the estimated administrative charge for that contract year and the amount Blue Cross determined was necessary to maintain the prospective hospital reimbursement funding for that contract year. (Comp., ¶¶ 18-19) The ASC required Blue Cross to provide ADAC a detailed settlement showing Amounts Billed to and owed by ADAC during the prior available Quarter including any surplus or deficit amounts. (Comp., ¶ 20) The quarterly settlements were used to adjust the future prepay amounts upward or downward

depending on whether employee health care claims were higher or lower than what ADAC had previously prepaid. (Comp., ¶ 21) ADAC wired the required prepayments to Blue Cross-owned bank account, on a periodic basis from 2002 through 2012. (Comp., ¶ 22)

ADAC recently learned that starting in 1994, Blue Cross implemented a scheme to secretly obtain more administrative compensation than it was entitled to obtain. (Comp., ¶ 27) An internal Blue Cross memo indicated that Blue Cross was to lower its disclosed administrative fee to give the illusion of lower cost, while at the same time artificially inflating the amounts it reported as hospital claims cost. (Comp., ¶ 28) Blue Cross then kept the difference between what it was actually paying hospitals for employee claims and what it reported it was paying for hospital claims. (*Id.*) As an example, if Blue Cross was required to pay a hospital $6,000 for a covered employee claim, it would report a charge of $6,810, keeping the additional $810 for itself as administrative compensation, instead of passing the actual $6,000 to Blue Cross' customer. (Comp., ¶ 29) Based on this information, ADAC believes Blue Cross "skimmed" Plan Assets equal to a variable percentage of all Peer 1-4 hospital charges incurred by ADAC employees, but the actual amount is unknown to ADAC and such information is solely in the control of Blue Cross. (Comp., ¶ 30) The Blue Cross memo indicated that this "pricing methodology" was done because the reported fees were viewed as "add-on" fees about which the customers complained with threats to leave Blue Cross. (Comp., ¶ 31) Hiding the additional administrative compensation in the claims cost would make the fee "no longer visible to the customer." (Comp., ¶ 32) This resulted in the disclosed "administrative costs charged to customers" lining up better with competitor fees, creating the illusion of a more competitive price. (*Id.*) ADAC claims Blue Cross has also charged other hidden fees, including "subsidies" and "surcharges" and that all these fees, subsidies and surcharges are collectively

referred to as "Hidden Fees." (Comp., ¶ 33) Blue Cross has charged ADAC these Hidden Fees since 2002 or earlier since 1994. (Comp., ¶ 34)

ADAC asserts that neither the ASC nor Schedule A include any reference to the Hidden Fees. (Comp., ¶¶ 36-37) Schedule A provides for an administrative charge of $36.21 per covered employee, per month and no additional administrative charge is disclosed. (Comp., ¶ 38) Blue Cross contends that it was allowed to assess the Hidden Fees based on disclosures which has been revised over the years. (Comp., ¶¶ 39-42) ADAC claims that these "disclosures" were ambiguous and misleading and did not explain how much the fee would be or how it was calculated. (Comp., ¶ 43) Nothing in Schedule A or the ASC provides that ADAC and the Plan agreed to pay these Hidden Fees. (Comp., ¶ 44) The Hidden Fees were not provided in the detailed settlement showing the Amounts Billed to and owed by ADAC provided by Blue Cross quarterly and annually. (Comp., ¶¶ 46-47) These annual settlements only disclosed those fees in Schedule A, not the Hidden Fees. (Comp., ¶ 50) Blue Cross admitted in an April 29, 2011 letter that the Hidden Fees were "administrative compensation" but did not explain why those fees were not reported in the settlements. (Comp., ¶ 51)

In addition to the annual settlements, Blue Cross provided ADAC with a "Form 5500" information developed by the Department of Labor, Internal Revenue Service and Pension Benefit and Guaranty Corporation, which is required to be filed by certain employers under ERISA and the Internal Revenue Code. (Comp., ¶¶ 55-56) The Form 5500 required disclosure of total "claims paid.", and the amount reported by Blue Cross included both the actual claims paid to health care service providers and the Hidden Fees that Blue Cross skimmed for itself as additional administrative compensation. (Comp., ¶ 57) The Form 5500 reports also required disclosure of all

commissions, administration Fees and other compensation or retention received by Blue Cross, but Blue Cross only reported the disclosed administrative Fees, not the Hidden Fees. (Comp., ¶ 60) Blue Cross' own training manual shows its intentional concealment of the Hidden Fees. (Comp., ¶ 70) The Hidden Fees included the Other Than Group Subsidy ("OTG Subsidy"), which is a cost transfer subsidy. (Comp., ¶¶ 74-75) Blue Cross collected the OTG Subsidy from ADAC and other ASC customers. (Comp., ¶ 76) Not all ASC customers were required to pay the OTG Subsidy which was used to subsidize healthcare coverage for non-group clients who had no affiliation with ADAC. (Comp., ¶¶ 77-78) A court has already held that Blue Cross' collection of the OTG Subsidy from ASC customers violated Michigan law and accordingly was a breach of Blue Cross' fiduciary duties to its ASC customers under ERISA. (Comp., ¶ 79)

This matter is before the Court on a Motion to Consolidate by Plaintiffs and a Motion to Dismiss by Blue Cross in lieu of filing an Answer. Briefs have been filed.

## II.     MOTION TO CONSOLIDATE

Plaintiffs seek to consolidate this case with nine other cases (total of 10 cases)[1] filed in this recent wave before the Honorable Victoria A. Roberts presenting the same legal issues and facts but filed by various plaintiffs. Since June 2011, Judge Roberts has been presiding over previously-filed cases, the lead case being *Hi-Lex Controls, Inc. v. Blue Cross,* Case No. 11-12557. Blue Cross opposes the motion.

---

[1] The other nine cases filed in 2012 are: *Morbark, Inc. v. Blue Cross,* Case No. 12-12843 (Roberts); *Lumbermen's, Inc. v. Blue Cross,* Case No. 12-15606 (Duggan); *Computer and Engineering Serv., Inc.,* Case No. 12-15611 (Duggan); *Adrian Steel Co. v. Blue Cross,* Case No. 12-15614 (Roberts); *East Jordan Plastics, Inc. v. Blue Cross,* Case No. 12-15621 (Drain); *Petoskey Plastics, Inc. v. Blue Cross,* Case No. 12-15642 (Edmunds); *VEC, Inc. v. Blue Cross,* Case No. 15671 (Borman); and, *Premier Tool & Die Cast Corp. v. Blue Cross,* Case No. 12-15685 (Steeh).

Initially, it appeared that the partes agreed to consolidate the cases for discovery and settlement. This was premised on Blue Cross' concurrence in the motion to consolidate under Rule 42. Subsequently, it was indicated that Blue Cross no longer agreed to the motion.

Of the 10 cases which Plaintiffs seek consolidation, two judges have now filed orders denying the motion for consolidation. Judge Bernard A. Friedman notes that "[w]hile plaintiffs make a convincing argument as to the benefits of consolidation, the Court has no ability to order the requested consolidation because all of the other, related cases are assigned to other judges. Nor does the Court have the power to reassign this case unilaterally to another judge. . . . and Judge Roberts has indicated she does not believe the instant case is a companion to any of hers." *(Terryberry Co., LLC v. Blue Cross,* Case No. 12-15612, Doc. No. 19). Judge Nancy G. Edmunds indicated that "contrary to assertions in the motion, Judge Roberts does not agree that this case is a companion to her Case No. 12-12843 or that this case should be reassigned to her under Fed. R. Civ. P. 42(a) or E.D. Mich. L. Civ. R. 83.11(b)(7)." (*Petoskey Plastics, Inc. v. Blue Cross,* Case No. 12-15642, Doc. No. 25)

Given that Judge Roberts does not believe the cases are companion and this Court has no authority to unilaterally reassign a case to another judge, Plaintiffs' Motion to Consolidate is denied.

### III.    MOTION TO DISMISS BY BLUE CROSS

Blue Cross seeks to dismiss the Complaint arguing that the ERISA claims are time-barred and the state law claims have no merit. Plaintiffs oppose the motion.

#### A.    Standard of Review

Rule 12(b)(6) of the Rules of Civil Procedure provides for a motion to dismiss based on failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic*

*Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 555 (internal citations omitted). Although not outright overruling the "notice pleading" requirement under Rule 8(a)(2) entirely, *Twombly* concluded that the "no set of facts" standard "is best forgotten as an incomplete negative gloss on an accepted pleading standard." *Id.* at 563. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion–even if that conclusion is cast in the form of a factual allegation. *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009). The non-conclusory "factual content" and the reasonable inferences from that content, must be "plausibly suggestive" of a claim entitling a plaintiff to relief. *Id.* The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

      **B.**     **ERISA Claims Time-Barred (Counts I and II)**

Blue Cross argues that Plaintiffs' ERISA claims are time-barred under the ERISA statute of limitations which bars claims "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation ... except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation." 29 U.S.C. § 1113(2). Blue Cross asserts that Plaintiffs had actual knowledge of the Access Fees

when the ASC was entered into by Plaintiffs. Blue Cross contends that the ASC "unequivocally" provided for the payment of Access Fees. Blue Cross cites a Michigan case, *Calhoun County v. Blue Cross Blue Shield of Michigan,* 297 Mich. App. 1 (2012), which held that in an identical form contract as in this case, Blue Cross' ASC customer "unequivocally agreed to the payment of the access fee, what it covered, and how it would be paid." *Id.* at 7.

Plaintiffs respond that the six-year statute of limitations applies in cases in which a fiduciary breached its duty by making a knowing misrepresentation or omission of a material fact to induce a party to act to his or her detriment or the fiduciary is engaged in acts to hinder the discover of a breach of fiduciary duty, citing *Caputo v. Pfizer,* 267 F.3d 181, 190 (2d Cir. 2011). Plaintiffs asserts that the Complaint is based on fraud and concealment that Blue Cross misrepresented the existence, nature and amount of Hidden Fees to Plaintiffs. Plaintiffs argues that the *Calhoun* case is inapplicable since it addressed "access fees," not the "Hidden Fees" alleged in Plaintiffs' Complaint.

When facing a motion to dismiss based on the statute of limitations, it is not enough for a plaintiff to argue that because the complaint is silent as to when the plaintiff first acquired actual knowledge of a claim, the complaint must be construed as not precluding the possibility that the plaintiff would be able to prove facts establishing entitlement to relief. *Bishop v. Lucent Technologies, Inc.,* 520 F.3d 516, 520 (6th Cir. 2008). The obligation to plead facts in avoidance of the statute of limitations defense is triggered by the fact that it is apparent from the face of the complaint that the time limit for bringing the claim has passed. *Id.*

To trigger the statute of limitations under ERISA, the Sixth Circuit has held that the relevant knowledge required to trigger the statute of limitations is knowledge of the facts or transaction that constituted the alleged violation. *Wright v. Heyne,* 349 F.3d 321, 329 (6th Cir. 2003). It is not

necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute. *Id.* The basic policies served by statutes of limitations are to prevent plaintiffs from sleeping on their rights and prohibiting the prosecution of stale claims. *Id.* at 330. These policies would be frustrated if the requisite "actual knowledge of the breach or violation" could only be obtained when the plaintiffs learned that they had a claim for violation of ERISA after consulting with an attorney even though plaintiffs had actual knowledge years earlier of all of the facts and alleged misdeeds constituting their claim. *Id.* at 330-31.

Reviewing the Complaint and the applicable agreements referred to in the Complaint, the Court finds Plaintiffs have stated allegations sufficient to overcome the statute of limitations defense. Blue Cross' motion refers to "Access Fees" which is expressly referred to in the ASC Master Contract. Plaintiffs acknowledge in the Complaint that they are required to pay certain administrative fees set forth in the ASC and in Schedule A. (Comp., ¶¶ 12, 15-16, 18-19, 36-37) However, the Complaint alleges "Hidden Fees" separate from the "Access Fees" referred to in Blue Cross' motion which are fees under the ASC. The Complaint alleges that "Hidden Fees" include a scheme by Blue Cross whereby Blue Cross would report a hospital charge to Plaintiffs, which was higher than the amount the hospital actually charged Blue Cross, keeping the difference as additional compensation apart from the administrative fee Blue Cross reported under the ASC. (Comp., ¶¶ 28-29, 33) "Hidden Fees" also included "subsidies" and "surcharges" which were not disclosed in the ASC. (Comp., ¶ 33) Plaintiffs assert they never agreed to pay the "Hidden Fees." (Comp., ¶ 35)

The *Calhoun* case referred to by Blue Cross is not relevant since that case specifically addressed "Access Fees" which are disclosed in the ASC or Schedule A. *Calhoun,* 297 Mich. App.

at 6-7. As noted above, the Complaint so alleges and Plaintiffs' fraud and breach of fiduciary claims are not based on these fees, but on what Plaintiffs have termed as "Hidden Fees" which are separate from "Access Fees" as termed by Blue Cross. Plaintiffs do not shy away from the fact and have so alleged in their Complaint that they entered into the ASC and various Schedule As with Blue Cross and were obligated to pay certain fees. It was the scheme of "Hidden Fees" which were revealed from a Blue Cross internal memo that Plaintiffs allege in their Complaint which Plaintiffs did not have knowledge of nor to which they agreed. (Comp., ¶ 28) Plaintiffs allege that based on this information, Plaintiffs believe that Blue Cross skimmed Plan Assets equal to a variable percentage of all Peer 1-4 hospital charges incurred by ADAC employees, but the actual amount is unknown to ADAC and such information is solely in the control of Blue Cross. (Comp., ¶ 30) The Blue Cross memo itself indicated that this "pricing methodology" was done because the reported fees were viewed as "add-on" fees by the customers who threatened to leave Blue Cross because of the fees. The memo indicated that hiding such additional administrative compensation would be viewed by the customers as competitive pricing since the disclosed administrative Fees under the ASC and Schedule A would be comparable to what others charge. (Comp., ¶¶ 31-32) Based on a review of the Complaint under Rule 12(b)(6), Plaintiffs have sufficiently pled facts as to "Hidden Fees" to state a claim to relief that is plausible on its face.

  The Blue Cross memo is undated, but Plaintiffs allege they did not discovery the full extent of Blue Cross' conduct until 2012, while other lawsuits were pending. (Comp., ¶ 87) The "Talking Points" Memo appears to be a revised version dated 4/17/2002. (Ex. 7 to Comp.) Plaintiffs assert that Blue Cross admitted in an April 29, 2011 letter that the Hidden Fees were "administrative compensation" but did not explain why those fees were not reported in the settlements. (Comp., ¶

10

51; Ex. 3 to Comp.) A review of the April 29, 2011 letter shows that according to Blue Cross, it has provided disclosure of "access fees" to ASC customers for contract years 2006 to the present. (Ex. 3 to Comp.) If in fact the "Hidden Fees" alleged by Plaintiffs are the "access fees" referred to by Blue Cross in its April 29, 2011 letter, Schedule A, the Renewal Term from January 2007 to December 2007 signed by Plaintiffs' Chief Financial Officer, Tomas E. Koweiski, dated December 14, 2006, expressly indicates that Blue Cross retained a portion of the hospital savings to cover the ASC Access Fee. (Ex. 1 to Comp.) Applying the six-year statute of limitations to this date would bar the current Complaint, which was filed on December 21, 2012. It would appear that in December 2006, if Plaintiffs had an issue as to what these fees referred to then any claims of fraud as to Schedule A or renewal of the ASC contract, Plaintiffs had such factual and "actual" knowledge in December 2006. However, because the Complaint alleges a term "Hidden Fees" as opposed to Blue Cross' term "Access Fees," reconciling the difference of terms and what each term essentially means requires the Court to interpret whether "Access Fees" as termed by Blue Cross, means the "Hidden Fees" alleged by Plaintiffs in their Complaint. However, as previously noted, Plaintiffs have alleged sufficient facts to state a plausible claim based on "Hidden Fees," which may or may not be the "Access Fees" termed by Blue Cross.

At this time, based on the Complaint and related documents, Plaintiffs have alleged that they did not have knowledge of their fraud claim until 2012 as to "Hidden Fees," therefore, the Complaint was timely filed in 2012. If at some point in time in this litigation the term "Hidden Fees" as alleged by Plaintiffs can be shown as the "Access Fees" termed by Blue Cross in Schedule A back in December 2006, Blue Cross may renew its statute of limitations motion under Rule 56(a) of the Rules of Civil Procedure. The Court's ruling at this time in based on Rule 12(b)(6) as moved

by Blue Cross.

The Court declines to apply the three years statute of limitations in this case since the Complaint does not allege fraud or concealment based on the fees disclosed in the ASC or Schedule A as termed by Blue Cross as "Access Fees." Plaintiffs have stated sufficient factual allegations in the Complaint to avoid the three-year statute of limitations defense raised by Blue Cross. Blue Cross' Motion to Dismiss as to the ERISA claims based on the ERISA statute of limitations is denied.

### C. State Law Claims (Counts III-IX)

Blue Cross seeks to dismiss the state law claims asserting they are without merit and are preempted by ERISA. Plaintiffs summarily respond that they do not believe their state law claims are preempted by ERISA, incorporating the brief filed in another case, but accepting the judge's prior ruling on this issue in that case.

It is noted that the court does not have the duty to speculate or review on which portion of the record a party relies on, nor is the court required to "wade through" the record for specific facts or argument, especially in this case where Plaintiffs cite to a record not before this case, but filed in a different case altogether. *See, Guarino v. Brookfiled Twp. Trustees,* 980 F.2d 399, 404 (6th Cir. 19921). Given Plaintiffs' express acceptance of a prior ruling that their state law claims are preempted by ERISA, the state law claims in Counts III to IX are dismissed.

### IV. MOTION TO STAY PENDING APPEAL IN ANOTHER CASE

Blue Cross seeks to stay this action pending its appeal in the *Hi-Lex* case before Judge Roberts. Judge Roberts entered a judgment in favor of Plaintiffs and against Blue Cross. (See Case No. 11-12557, Doc. Nos. 279, 280) Plaintiffs oppose the motion.

Courts in this district considering the instant motion to stay pending the appeal in Judge Roberts' case have granted the motion. (See Case No. 12-15671, Doc. No. 38 (collecting cases)). Judge Roberts, in granting the motion to stay in the cases before her found that the issues on appeal in *Hi-Lex* will substantially affect the outcome of the cases before her. (See Case No. 11-12557, Doc. No. 37) The Court exercises its discretion to stay the matter and grants Blue Cross' Motion to Stay the matter pending the resolution of its appeal before the Sixth Circuit Court of Appeals. *Ohio Environmental Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.,* 556 F.2d 393, 396 (6th Cir. 1977).

**V.    CONCLUSION**

For the reasons set forth above,

IT IS ORDERED that Plaintiffs' Motion for Consolidation **(Doc. No. 14)** is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss **(Doc. No. 18)** is GRANTED IN PART and DENIED IN PART. The state law claims set forth in Counts III to IX are DISMISSED; the ERISA claims set forth in Counts I and II remain.

IT IS FURTHER ORDERED that Defendant's Motion to Stay **(Doc. No. 32)** is GRANTED. Once a mandate is issued, the parties will notify the Court and a status conference will then be scheduled.

Dated:  September 20, 2013         S/Denise Page Hood
                                   Denise Page Hood
                                   United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 20, 2013, by electronic and/or ordinary mail.

                                   S/LaShawn R. Saulsberry
                                   Case Manager

13